IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL PAULICK,<br><br>    Plaintiff,<br><br>  v.<br><br>RITZ-CARLTON HOTEL COMPANY, LLC et al.<br><br>    Defendants. | No. C 10-04107 CRB<br>No. C 10-01115 CRB<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT** |
| RICHARD SKAFF,<br><br>    Plaintiff,<br><br>  v.<br><br>RITZ-CARLTON HOTEL COMPANY, LLC, et al.<br><br>    Defendants. | |

These are two related cases brought by physically disabled persons against Defendants – owners, lessees, lessors, operators, franchisees, and franchisors of the Ritz Carlton hotel in Half Moon Bay – for the hotel's alleged nonconformity to construction requirements imposed by the Americans With Disabilities Act ("ADA"). The parties hope to resolve these

cases through mediation. Impeding settlement, however, is their disagreement about whether Defendants may be held liable for a third party's failure to design and construct the hotel for first occupancy in conformity with the ADA. Plaintiffs Skaff and Paulick and two Defendants have filed Motions for Partial Summary Judgment, submitting this particular legal issue for the Court to decide before their mediation.

## I. BACKGROUND

The facts relevant to the Motions are undisputed. Plaintiffs Skaff and Paulick allege that they have physical disabilities that require them to use wheelchairs. Skaff Mot. (dkt. 57) at 2; Paulick Mot. (dkt. 47) at 1. They claim that they were denied their rights to full and equal access at the Ritz Carlton hotel in Half Moon Bay because the hotel was designed and constructed between 1999 and 2001 in a manner that did not comply with then-existing ADA and California requirements. Skaff Mot. at 1; Paulick Mot. at 2. For purposes of these Motions only, the Court is to assume that none of the Defendants participated in designing or constructing the hotel. See Skaff Mot. at 2-3; Paulick Mot. at 2-3; Dfs.' Identical Motions (dkts. 54, 42) at 3-4 ("Dfs.' Mots."). Rather, the Court should assume that third-party developer Vestar-Athens/YCP II Half Moon Bay, LLC ("Vestar") designed and constructed the hotel between 1999 and 2001, at a time when Vestar also owned the facility. See Skaff Mot. at 2-3; Paulick Mot. at 2-3; Dfs.' Mots. at 3-4.

Defendant Ritz Carlton Hotel Company, L.L.C. ("Ritz Carlton"), an indirect subsidiary of Defendant Marriott International, Inc. ("Marriot"), has operated the hotel since it first opened in April 2001, after Vestar completed construction. See Ritz & Marriot Opp'n (dkts. 66, 50) at 6; Skaff Mot. at 3. Defendant SHC Half Moon Bay, LLC ("SHC") purchased the hotel from Vestar in 2004, and Defendant DTRS Half Moon Bay, LLC ("DTRS") has leased the hotel from Defendant SHC since 2004. Dfs.' Mots. at 3-4.

Plaintiffs each have filed Motions for Partial Summary Judgment. See Skaff Mot.; Paulick Mot. Defendants SHC and DTRS joined in filing identical Cross-Motions for Partial Summary Judgment. See generally Dfs.' Mots. Although Defendants Ritz Carlton and

1 Marriot did not join in Defendants SHC's and DTRS's Motion, they have filed Oppositions
2 to Plaintiffs' Motions. See Ritz & Marriot Opp'n at 6.

## II. LEGAL STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis for a reasonable fact finder to find for the nonmoving party, and a dispute is "material" only if it could affect the outcome of the suit under governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). A principal purpose of the summary judgment procedure "is to isolate and dispose of factually unsupported claims." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Ind. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).

## III. DISCUSSION

The parties disagree about whether Defendants may be held liable under the ADA (and corresponding California law) for the hotel's alleged non-conformity with design and construction requirements in place at the time it was built. As explained below, the Court holds that Defendants are entitled to summary judgment on the ADA issue. As a general rule, subsequent owners, lessees, lessors, and operators of a public accommodation who did not participate in designing and constructing the facility for first occupancy are not liable under the ADA for any of its design and construction defects; nor did Defendant SHC contractually assume such liability in this case. The Court set the briefing schedule and scheduled the hearing based on its understanding that the parties sought resolution of the ADA issue alone. The Court therefore will not address at this time the California law issue raised by Plaintiffs' Motions: whether California law imposes liability for design and construction defects on subsequent owners, lessees, lessors, or operators. Although the Court denies Plaintiffs' Motions, it does so without prejudice as to the California law issue.

3

First, this Order briefly describes the relevant ADA provisions and clarifies the issue before the Court. Second, the Order explains that the plain language of the ADA does not subject Defendants to liability for the hotel's alleged nonconformity to the ADA's design and construction requirements. Finally, the Order explains that there is no genuine issue of material fact to establish that Defendant SHC contractually assumed such liability from Vestar when it purchased the hotel. See Skaff Mot. at 18.

### A. Preliminary Matters

The ADA makes it unlawful for "any person who owns, leases (or leases to),[1] or operates a place of public accommodation" to discriminate against individuals "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). A hotel whose operations affect commerce qualifies as a "place of public accommodation" subject to the ADA. 42 U.S.C. § 12181(7)(A). Two types of "discrimination" defined by the ADA are relevant to this case, although only the first type is at issue in the Motions. The first type of discrimination is "a failure to <u>design and construct facilities for first occupancy</u> later than 30 months after July 26, 1990, that are readily accessible to and usable by individuals with disabilities" in accordance with the regulations issued pursuant to the ADA (hereinafter referred to as "design and construction discrimination"[2]). 42 U.S.C. § 12183(a)(1) (emphasis added). The second type of discrimination is an existing facility's failure to comply with its continuing obligation to <u>remove architectural barriers</u> to access when such removal is "readily achievable" (hereinafter referred to as "barrier discrimination"[3]). 42 U.S.C. § 12182(b)(2)(A)(iv) (emphasis added). Plaintiffs and Defendants disagree about whether subsequent owners (here, Defendant SHC), lessees (here, Defendant DTRS), lessors, and operators (here,

---

[1] The Ninth Circuit has interpreted "a person who . . . leases (or leases to)" as meaning a lessee or lessor. See Lonberg v. Sanborn Theaters Inc., 259 F.3d 1029, 1033-34 (9th Cir. 2001).

[2] This is the Court's own term, used to help eliminate duplicative language throughout the Order.

[3] Also the Court's own term.

4

1 Defendants Ritz Carlton and Marriot) may be held liable for design and construction
2 discrimination, and have moved for partial summary judgment on that limited issue.[4]
3    Defendants SHC and DTRS argue that they are entitled to summary judgment
4 because, as subsequent owners, lessees, lessors, and/or operators a hotel that is an "existing
5 facility," they "are not subject to" the design and construction requirements placed on "new
6 construction." See Dfs.' Mot. at 3, 5. Instead, they claim, the ADA requires only that they
7 remove barriers from the "existing facility" when doing so is readily achievable. Id.
8 Contrary to Defendants' assertion, however, the 2010 regulations do appear to impose
9 obligations on them both relating to barrier removal and under the 1991 design and
10 construction requirements for "new construction."[5] See 28 C.F.R. §§ 36.104 (defining
11 "existing facility" and "public accommodation"), 36.401 (defining "new construction");
12 36.406(a)(5) (appearing to mandate that Defendants bring the hotel into compliance with the
13 1991 design and construction standards); 28 C.F.R. Pt. 36, App. A (elaborating on definition
14 of "existing facility"). However, whether the regulations impose obligations on Defendants
15 relating to "new construction" is not before the Court. The more narrow question before the
16 Court is instead whether the plain language of the ADA permits Plaintiffs to sue these
17 Defendants for the hotel's alleged nonconformity with the 1991 standards for design and
18 construction. For the reasons set forth below, the Court concludes that it does not.
19 /
20 /
21

22   [4] Plaintiffs also claim that Defendants are liable under the ADA for barrier discrimination, see
23 Skaff Am. Compl. (dkt. 16) ¶ 32; Paulick Compl. (dkt. 1) ¶ 29-31, but that issue is not before the Court on these Motions.

24   [5] The 2010 ADA regulations explain that "[e]xisting facility means a facility in existence on any given date, without regard to whether the facility may also be considered newly constructed" (i.e.,
25 "designed and constructed for first occupancy after January 26, 1993," and therefore subject to the 1991 standards). 28 C.F.R. §§ 36.104, 36.401. "A newly constructed facility remains subject to the
26 accessibility standards in effect at the time of design and construction . . . . The fact that [it] is also an existing facility does not relieve the public accommodation of its obligations under the new construction
27 requirements of this part. Rather it means that in addition to the new construction requirements, the public accommodation has a continuing obligation to remove barriers that arise, or are deemed barriers,
28 only after construction." 28 C.F.R. Pt. 36, App. A (explaining the definition of "existing facility") (emphasis added).

5

### B. General Rule: Plain Language of the ADA

The ADA provides that "[n]o individual shall be discriminated against on the basis of disability . . . by any person who owns, leases (or leases to), or operates a place of public accommodation," 42 U.S.C. § 12182(a), and prohibits design and construction discrimination, 42 U.S.C. § 12183(a)(1). The ADA creates a private right of action for "any person who is being subjected to discrimination on the basis of disability in violation of [the ADA]," and provides that such individuals may seek injunctive relief in the form of "an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by [the ADA]." 42 U.S.C. § 12188(a). Ninth Circuit precedent has established that a person who designs and constructs a public accommodation in a manner that does not comply with the ADA, but who is not the "owner, lessee, lessor, or operator," cannot be held liable for design and construction discrimination. Sanborn Theaters Inc., 259 F.3d at 1030, 1036 (affirming partial summary judgment for an architect who designed and constructed a movie theater, but who was "neither the owner, lessee, lessor, nor operator" of the facility). Sanborn stands for the proposition that the ADA subjects only owners, lessees, lessors, and operators of non-compliant facilities to liability for design and construction (or any other kind of) discrimination. Id.

Although Defendants here are owners, lessees, lessors, or operators of the hotel, they were not involved in designing or constructing it for first occupancy. The Court holds that to be liable under § 12183(a)(1), a defendant must both (1) currently own, lease, or operate a public accommodation, see id., and (2) have engaged in design and construction discrimination. See infra subsection (2) (discussing the plain language of the ADA). Therefore, Defendants cannot, as a matter of law, be held liable for design and construction discrimination.

### 1. Rodriguez Case and Plaintiffs' Policy Arguments

The parties agree that the only reported case directly on point is Rodriguez v. Investco, L.L.C., 305 F. Supp. 2d 1278 (M.D. Fla. 2004). See Skaff Mot. at 15; Paulick Mot. at 8; Dfs.' Mot. at 6. That case also involved a defendant who purchased a hotel designed

6

and constructed by a third party in a manner that did not comply with the ADA. Id. at 1279, 1283. The plaintiff in that case, like Plaintiffs here, claimed that the defendant was liable for design and construction discrimination under § 12183(a)(1) even though the defendant had not itself designed or constructed the hotel. Id. at 1282-83. After a bench trial, the court entered judgment for the defendant, finding that: (1) a person who did not design or construct a non-compliant structure cannot be liable for design and construction discrimination under § 12183(a)(1); and (2) the plaintiff had not established that the defendant subjected him to any discrimination because the defendant "made (and continues to make) substantial efforts that are likely to make the [hotel] ADA compliant." Id. at 1282-85. The parties dispute whether the court's first finding regarding the validity of the plaintiff's legal theory amounts to a "holding,"[6] but this issue is irrelevant because this Court is not bound by holdings of courts in other districts. Plaintiffs also criticize other aspects of the Rodriguez court's opinion.[7] However, because the plain meaning of the ADA supports Rodriguez's conclusion (that the ADA does not impose liability on subsequent owners, lessees, lessors, and operators for design and construction flaws), this Court need not consider those potential flaws in the Rodriguez court's analysis.

Plaintiffs urge this Court to disregard Rodriguez and find that any person who purchases a non-compliant facility assumes liability for flaws in design and construction. See Skaff Mot. at 15; Paulick Mot. at 8-10. Plaintiffs argue that reading Rodriguez and Sanborn together leads to a "senseless" result. See Paulick Mot. at 9. Sanborn conclusively established that private plaintiffs may not pursue relief in the Ninth Circuit from a designer or constructor who does not currently own, lease, or operate the non-compliant facility. Id. at 9-10; 259 F.3d at 1030, 1036. Therefore, reading the ADA as barring suit against the current

---

[6] Plaintiffs argue that Rodriguez's only holding was that the defendant did not discriminate against the plaintiff, and point to case law supporting that position. See Skaff Mot. at 17 (citing Access 3 All, Inc. v. Trump Int'l Hotel And Tower Condominium, 458 F. Supp. 2d 160, 176 (S.D.N.Y. 2006); Paulick Mot. at 9 n.11 (citing same)).

[7] Plaintiffs criticize the decision for, among other things, (1) asserting that subsequent owners, lessees, lessors, and operators are subject only to barrier removal requirements, (2) discussing "intentional" discrimination, even though intent is irrelevant, and (3) being motivated by an anti-ADA plaintiff and attorney attitude. See Skaff Mot. at 15-18; Paulick Mot. at 8-9.

7

owners, lessors, lessees, and operators will often[8] deprive private plaintiffs of an opportunity to obtain injunctive relief for design and construction discrimination. Id. at 9-10. For instance, Plaintiffs argue that a designer and constructor could avoid complying with the ADA by selling its non-compliant facility before first occupancy,[9] and the subsequent owner could avoid addressing serious accessibility issues merely by establishing that removing the barriers is not "readily achievable" under § 12182(b)(2)(A)(iv). Id. at 10. Plaintiffs argue that this would encourage sham sales of non-compliant public accommodations because a transfer in ownership would "magically extinguish" liability for both parties.[10] Id. Thus, Plaintiffs' argument implies, Congress must have intended design and construction discrimination liability to attach to subsequent owners, lessors, lessees, and operators of non-compliant public accommodations.

### 2. **Plain Meaning**

Plaintiffs' policy arguments are unavailing because the plain meaning of the ADA does not allow private plaintiffs to sue a person for design and construction discrimination if that person did not design or construct a non-compliant public accommodation for first occupancy. See 42 U.S.C. § 12182(a), 12183(a)(1); 12188(a). The ADA provides that "[n]o individual shall be discriminated against on the basis of disability. . . by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a) (emphases added). It then creates a private right of action for "any person who is being subjected to discrimination . . . or who has reasonable grounds for believing such

---

[8] Under Rodriguez, private plaintiffs could obtain injunctive relief for design and construction discrimination only if the current owner, lessor, lessee, or operator participated in designing and constructing the noncompliant facility for first occupancy.

[9] This is not entirely accurate. The Attorney General could bring an ADA discrimination suit against a previous owner who improperly designed and constructed a public accommodation for first occupancy (here, allegedly Vestar). See 42 U.S.C. § 12188(b)(2). However, Plaintiffs are correct that such a defendant would escape liability in a private suit. Because such a defendant no longer owns, leases, or operates the facility, he or she is no longer in a position to remedy the violations pursuant to an injunction, which is the only relief afforded under the ADA to private plaintiffs. See 42 U.S.C. § 12188(a)(2).

[10] Plaintiffs conceded at the motions hearing that, in these cases, no evidence suggests that Defendants engaged in sham transactions to avoid complying with the ADA.

8

1 person is about to be subjected to discrimination." 42 U.S.C. § 12188(a)(1). Thus a private
2 plaintiff may sue the owner, lessee, lessor, or operator of a non-compliant public
3 accommodation only if the owner, lessee, lessor, or operator either subjected (or is about to
4 subject) the plaintiff to "discrimination," as defined in the ADA. One way in which the
5 owner, lessee, lessor, or operator of a public accommodation might "discriminate" against a
6 person with disabilities is by "fail[ing] to design and construct facilities for first occupancy
7 later than 30 months after July 26, 1990, that are readily accessible to and usable by
8 individuals with disabilities." 42 U.S.C. § 12183(a)(1). These provisions plainly mean that a
9 private plaintiff may sue the current owner, lessee, lessor, or operator of a public
10 accommodation for design and construction discrimination only if the owner, lessee, lessor,
11 or operator failed to properly design and construct a public accommodation for first
12 occupancy. If a defendant did not participate in designing or constructing the non-compliant
13 public accommodation for first occupancy, then it cannot be liable for design and
14 construction discrimination under § 12183(a)(1) because it did not engage in that type of
15 discrimination.[11]

16 At the motion hearing, Plaintiff Skaff's counsel argued that the "act of discrimination"
17 here was failing to "provide a newly constructed facility that is accessible" in accordance
18 with the ADA standards. Yet the ADA specifically defines what actions constitute
19 discrimination for purposes of ADA liability, see 42 U.S.C. § 12182(b); 12183(a), and a
20 failure to "provide" a newly constructed facility that is accessible is not one of them.

---

[11] Plaintiffs also argue that a particular ADA regulation (28 C.F.R. § 36.406(a)(5)) requires Defendants to remedy design and construction flaws, and that this supports Plaintiffs' argument that Defendants may be held liable for design and construction discrimination. See Skaff Mot. at 12-14. The regulation at issue provides that public accommodations that (a) were designed and constructed for first occupancy between January 26, 1993 and March 15, 2012, which applies to the Ritz here, and (b) "do not comply with the 1991 Standards," which also allegedly applies to the Ritz here, "shall [either] before March 15, 2012, be made accessible in accordance with either the 1991 Standards or the 2010 Standards [or] on or after March 15, 2012, be made accessible in accordance with the 2010 Standards." 28 C.F.R. §§ 36.401(a), 36.406(a)(5). Contrary to Plaintiffs' assertions, this regulation does not support their argument that Defendants may be held liable for design and construction discrimination. Whether ADA regulations require Defendants to make the hotel accessible in accordance with the 1991 standards has no bearing on whether Defendants may be held liable for discrimination. A failure to comply with § 36.401(a) does not constitute "discrimination" under the ADA, see 42 U.S.C. §§ 12182(b) and 12183(a) (defining "discrimination"), and therefore it would not serve as a basis for Plaintiffs' design and construction discrimination claims.

9

Nothing in § 12183(a)(1), which is the sole basis of Plaintiff Skaff's Motion, suggests that merely "providing" a newly-constructed, noncompliant public accommodation to customers constitutes design and construction discrimination.

Plaintiff Paulick's counsel argued at the hearing that footnote 7 of the Ninth Circuit's Sanborn Theaters Inc. opinion supports Plaintiffs' interpretation of the ADA. The Court disagrees. That footnote explains why the legislative history does not clearly indicate whether Congress intended the limitation on liability contained in § 12182, which limits liability to owners, operators, lessees, and lessors of public accommodations or commercial facilities, to also apply § 12183(a)(1)'s prohibition of design and construction discrimination. 259 F.3d at 1035 & n.7. The Ninth Circuit ultimately concluded that the text and structure of the statute support reading the two sections together: § 12182 sets out a general rule prohibiting owners, lessees, lessors, and operators from discriminating against persons with disabilities, and § 12183(a)(1) describes a particular type of discrimination (design and construction discrimination) that is prohibited under § 12182's general rule. Id. at 1034-35 & n.7. Therefore, the Ninth Circuit concluded that the ADA does limit design and construction liability "to those who were specified in the '[g]eneral rule'; that is, only owners, lessees, lessors, and operators of either public accommodations or commercial facilities." Id. at 1034-35. The Court views footnote 7 as entirely consistent with this Order: (a) private plaintiffs may sue only current owners, lessees, lessors, or operators for engaging in acts of discrimination that are prohibited by the ADA, (b) Defendants did not engage in design and construction discrimination, and therefore (c) Plaintiffs may not sue Defendants for such discrimination.

Plaintiffs also ask the Court to broadly interpret the ADA statutes to effectuate the purpose of the ADA, which is to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." See Skaff Opp'n (dkt. 64) at 4 (quoting 42 U.S.C. § 12101(b)(1)). As Defendants correctly note, however, the Court may exercise its power to broadly interpret only those civil rights statutes that contain ambiguous language. See Dfs.' Opp'n at 4 (citing Kang v. U. Lim Am., Inc., 296 F.3d 810,

816 (9th Cir. 2002)). Because the statute is unambiguous, the Court may not alter its terms. Accordingly, the Court concludes that the ADA, as a general rule, does not permit Plaintiffs to sue Defendants for design and construction discrimination.

### C. Contractual Assumption of Liability

Even if the ADA does not impose successor liability on Defendants for flaws in design and construction, Plaintiff Skaff argues that one of the Defendants – Defendant SHC – contractually assumed such ADA liability when it purchased the hotel. See Skaff Mot. at 18. Plaintiff Skaff bases his argument on an assumption of liability clause appearing in the Purchase and Sale Agreement ("PSA") between Vestar and Defendant SHC. See id. Defendants SHC and DTRS do not address contractual assumption of liability in their own Motion. See generally Dfs.' Mots. However, because they move for partial summary judgment on whether they may be held liable for design and construction discrimination under the ADA, whether Defendant SHC contractually assumed such liability is also inherently relevant to their Motion.

Summary judgment is proper only when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587. Summary judgment on a claim based on a contract clause is appropriate only when the contract clause at issue is unambiguous. United States v. Contra Costa Cnty. Water Dist., 678 F.2d 90, 91 (9th Cir. 1982). Whether a contract is ambiguous is a question of law. See In re U.S. Fin. Sec. Litig., 729 F.2d 628, 631-32 (9th Cir. 1984); Contra Costa Cnty. Water Dist., 678 F.2d at 91. If a court determines that a provision is ambiguous, then the parties may introduce extrinsic evidence to raise a genuine dispute of fact regarding the proper interpretation of the contract. See Contra Costa Cnty. Water Dist., 678 F.2d at 91. Thus it is for the Court to decide whether the PSA's assumption of liability clause is ambiguous, and whether summary judgment is appropriate for either Plaintiffs or Defendant SHC. The Court finds that Defendant SHC is still entitled to summary judgment because the assumption of

1 liability clause is unambiguous, and does not support a finding that Defendant SHC
2 contractually assumed ADA design and construction discrimination liability from Vestar.

3   The relevant clause in the PSA provides:

> <u>Assumed Liabilities</u>.  At closing, <u>to the extent</u> either (a) <u>arising after the Closing</u> or (b) <u>Purchaser receives a credit to the Purchase Price</u> with respect to such Liabilities at Closing, <u>Purchaser shall assume all liability</u>, obligation, damage, loss, diminution in value, cost or expense of any kind or nature whatsoever, whether accrued or unaccrued, actual or contingent, known or unknown, foreseen or unforeseen (collectively, "Liabilities") arising from, relating to, or in connection with the Property or the Hotel, <u>including, without limitation</u>, subject to Seller's express representations and warranties in Section 5.1, <u>all Liabilities with respect to the condition of the Property, including without limitation, the design, construction,</u> engineering, maintenance and repair or environmental condition of the Property; provided that, <u>Seller shall retain and remain liable for all liabilities which accrue prior to the Closing and which are not expressly assumed by Purchaser</u>[12] under this Agreement or the Conveyance documents to be executed pursuant to this Agreement at closing.

PSA (dkt. 60, Ex. 1) § 1.9 (emphases added).  The assumption of liability clause above unambiguously demonstrates that Defendant SHC assumed design and construction liability only to the extent that (a) the liabilities arose after the closing or (b) Defendant SHC received a credit to the purchase price for such liabilities at closing.  <u>See</u> Dfs.' Skaff Opp'n at 14.  Neither party contends that Defendant SHC received a credit to the purchase price, and therefore, whether it assumed the alleged ADA liability depends on whether that liability "arose after the closing."

  The Court concludes that liability for design and construction flaws in the hotel arose <u>before</u> closing, and therefore the clause does not support a finding that Defendant SHC assumed such liability.  First, the 1991 Standards were in effect at the time the hotel was designed and constructed.  Second, Vestar completed design and construction in 2001, three years before closing.  Therefore, any ADA liability for design and construction discrimination accrued before closing, and Defendant SHC did not assume such liability by virtue of the assumption of liability clause.  Because the assumption of liability clause is unambiguous, and does not establish that Defendant SHC assumed liability for design and

---

[12] Plaintiff Skaff does not contend that the PSA contained any specific reference to liability for ADA design and construction violations.

construction discrimination under the ADA, there is no genuine issue of material fact, and Defendant SHC is entitled to summary judgment as a matter of law.

**IV. CONCLUSION**

Because no triable issue of fact exists to establish that any of the Defendants could be liable for ADA design and construction discrimination, either under the plain language of the ADA or by virtue of a contractual assumption of risk, the Court grants Defendants' Motion for Partial Summary Judgment, and denies Plaintiffs' Motions for Partial Summary Judgment (without prejudice only as to the California law issue).

**IT IS SO ORDERED.**

Dated: December 8, 2011  CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE